By the Court
 

 (Kinkade, J.).
 

 This action in mandamus was commenced in this court. It was submitted on the petition, the answer, and a very limited amount of oral testimony concerning the relator’s claimed ownership of certain promissory notes, which are the subject-matter of the action, and arguments of counsel.
 

 In April, 1930, Lorain county, Ohio, desired to purchase a site on which to erect, furnish and equip a county hospital. The county did not then have on hand ■the cash, or its equivalent in securities, to finance the enterprise to completion.
 

 The county commissioners, in order to provide the necessary funds, duly and legally issued and sold at par and for cash 85 promissory notes of the county, each for the sum of $5000, bearing interest at four and one-half per cent., payable semiannually. All notes were dated April 1, 1930, and all matured two years from date of issue, that is to say, on April 1,1932; the total amount of the note issue was $425,000, and, with the proceeds of this note issue on hand, the enterprise went forward.
 

 In January, 1932, the county commissioners duly and legally authorized the issue and sale, at not less than par and accrued interest, of 404 coupon bonds of the county, to be numbered from 1 to 404, inclusive; bond No. 1 being in the sum of $750, and the other 403 bonds each being in the sum of $1,000, the total issue aggregating $403,750, all bonds to bear date of March 1, 1932, with interest at six per cent, per annum, payable semiannually, and to mature serially at semiannual periods from and after April 1, 1933, to October 1, 1950. These bonds were duly issued and sold to the relator for cash, at par and accrued interest, with an added premium of $1,052, on March 3,1932. The total
 
 *117
 
 sale priee paid by relator was $404,936.50; that is to say:
 

 Principal of bonds..................... $403,750.00
 

 Accrued interest........................ 134.50
 

 Premium ............................. 1,052.00
 

 $404,936.50
 

 These bonds were issued and sold for the purpose of paying and retiring the note issue at maturity of the notes on April 1, 1932, pending the levy and collection of a general tax on all taxable property in Lorain county to pay the cost of the hospital site and the buildings, furniture, equipment and improvements completed thereon pursuant to law.
 

 It is claimed that the relator was the owner of 65 of the notes, aggregating $325,000, issued April 1,1930, on and prior to the date on which relator purchased and paid for the bond issue of March 3,1932, and that relator had so informed the county treasurer and demanded payment prior to the maturity thereof of the notes so owned by relator. This claimed ownership by the relator was denied by the answer.
 

 The claim of the relator, as stated in the petition, is that inasmuch as the proceeds of the bond issue could be used only to retire the -notes, it was the clear legal and imperative duty of the county treasurer to retire and cancel forthwith on presentation the notes issued, regardless of the maturity dates expressed- in the notes, and that this duty certainly existed on and after March 17, 1932, on which date the county commissioners duly passed a resolution authorizing and directing the county treasurer so to do, and that the county treasurer having refused to pay as directed, the relator is entitled to a peremptory writ of mandamus requiring immediate payment, or if not entitled to this, the relator is entitled to an alternative writ commanding
 
 *118
 
 payment, or a showing of facts justifying the refusal to pay.
 

 The relator claims further that from the date the county received the payment from relator for the bond issue on March 3,1932, up to the maturity of the notes on April 1, 1932, the county would be paying illegally four and one-half per cent, on the note issue and six per cent, on the bond issue covering the same period of time, and that in any event this must be true from March 17, 1932, the time at which the county commissioners passed the resolution authorizing and directing the county treasurer to then pay the notes held by the relator, and it is said by the relator that this contemplated double payment of interest, so-called, constituted an illegal disbursement of public moneys which entitled the relator to the relief prayed for in the petition.
 

 It is also claimed in the petition that the refusal of the county treasurer to pay the notes held by the relator in advance of maturity is based on a desire of the treasurer to leave the fund in the bank depositaries of the county, where it earns only two per cent, interest, thereby entailing an unnecessary loss to the county.
 

 The answer denies many of the allegations in the petition.
 

 The figures mentioned herein are taken from the petition. Some of the totals are obviously incorrect, unless other facts exist that are not stated in the petition. For instance, it was obviously quite impossible to pay in full even the principal of the note issue, totaling $425,000, with the proceeds of the bond issue, the principal of which totals only $403,750. Adding to this last sum the accrued interest, $134.50, and the premium paid, $1,052, makes only a total of $404,-936.50. This amount would fall short of meeting the principal alone of the note issue by $20,063.50.
 

 It does not appear in the petition what part, if any, of the interest on the notes had been paid. However,
 
 *119
 
 as this interest was payable semiannually, it may be a fair inference that the first three interest coupons were paid as they matured; but even so, no inference arises that the fourth interest coupon, covering six months and amounting to $9,562.50, had been paid, for the reason that it was not due until April 1, 1932. If this be added to the principal of the notes, it would make the total sum to be retired $434,562.50, or $29,626 more than the total proceeds received for the bonds, $404,-936.50.
 

 If the figures found in the petition are correct, and if it were the legal duty of the treasurer to disburse the fund immediately, in payment of the notes, then manifestly he could not pay from that fund alone all the notes in full, either then or at the maturity of the notes.
 

 The apparent discrepancies in figures may arise by reason of the haste which counsel stated they were obliged to employ in preparing the case for filing, a haste that made it impossible for counsel to prepare and file briefs. This same haste may explain why counsel for the relator, when intending to allege in the petition, page 2, paragraph 2, line 1, that the relator was the owner of the 65 notes, total face value of $325,000, in fact did state that the defendant, who was the county treasurer, was the owner of those notes.
 

 We are not able to appreciate substantial merit in the claims of the relator that any of this note issue should be paid prior to the time of maturity fixed in the notes. There is no evidence presented showing an abuse of discretion on the part of the county treasurer. The case does not present the violation of a duty clearly and definitely enjoined by law. The writ will be denied and the case dismissed at the costs of relator.
 

 Writ denied.
 

 Jones, Matthias, Day, Allen and Stephenson, JJ., concur.
 

 Marshall, C. J., concurs in the judgment.